## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,        )
                              )
       v.                  )      Case No. 1310000634
                              )
DILIP NYALA,            )
                              )
       Defendant.        )

## <u>ORDER</u>

This 11th day of September, 2014, upon consideration of the State's Motion for Reargument, Defendant's opposition thereto, the parties' arguments at the hearing, and the record of this case, the State's Motion for Reargument is DENIED. It appears that:

1. On July 17, 2014, the Court issued a written opinion granting Defendant Dilip S. Nyala's (the "Defendant") Motion to Suppress. The Opinion was docketed on July 23, 2014.

2. On July 30, 2014, the State of Delaware (the "State") timely filed a Motion for Reargument, pursuant to Superior Court Criminal Rule 57(d) and Superior Court 59(e).

3. The State's grounds for reargument are: (1) the Court has previously upheld traffic stops where an officer, conducting surveillance in an unmarked

vehicle, radios his or her observation of a traffic violation to another officer, (2) the Court should "reexamine" its interpretation of 21 *Del. C.* § 701 based on the decision in *State v. Coustenis[1]*, and (3) the Wilmington Police Department officers had reasonable suspicion to detain Defendant independent of the traffic stop.

4.    On August 5, 2014, Defendant filed an opposition to the State's Motion. He asserts that the Court did not misapprehend the facts or the law and, thus, reargument is "wholly inappropriate" in this case.[2]

5.    A hearing was held on September 5, 2014. Following the hearing, the Court reserved decision and advised the parties that a written decision would be issued.

6.    A motion for reargument in a criminal case is governed by Superior Court Criminal Rule 57(d) and Superior Court Civil Rule 59(e).[3]

7.    The law is well-settled that a motion for reargument will be denied unless "the Court has overlooked a controlling legal principle or has misapprehended the law or facts that would have changed the outcome of the

---

[1] *State v. Coustenis*, 233 A.2d 449 (Del. Super. 1967).

[2] Def.'s Resp., 5 (Aug. 5, 2014).

[3] *See State v. Zachary*, 2013 WL 5783388, n. 1 (Del. Super. Dec. 23, 2013). *See also* Super. Ct. Crim. R. 57(d) ("In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule or in any lawful manner not inconsistent with these rules or the rules of the Supreme Court").

        Superior Court Civil Rule 59(e) provides, in pertinent part, that:
> [a] motion for reargument shall be served and filed within 5 days after the filing of the Court's opinion or decision. The motion shall briefly and distinctly state the grounds therefor. Within 5 days after service of such motion, the opposing party may serve and file a brief answer to each ground asserted in the motion.

underlying decision."[4]   The motion "should not be used merely to rehash arguments already decided by the Court."[5]  Moreover, the motion cannot be used to "present new arguments not previously raised."[6]

8.    In the instant case, the Court previously considered each of the grounds asserted by the State in support of its Motion for Reargument.

9.    The Court found that the officer (or officers) who initiated the stop lacked probable cause to stop Defendant for a traffic code violation.[7]  The State did not present any testimony or other evidence from the officer(s) who stopped Defendant's vehicle.  Moreover, the officer who testified that he observed a traffic violation "detached himself from any stop."[8]

10.   The Court also found that even if the initial stop for a traffic code violation was arguably valid based on the testifying officer's observation, there was no evidence of any facts that developed after Defendant's vehicle was stopped which would have enabled the officer(s) to lawfully detain Defendant for further questioning and investigation in accordance with 11 *Del. C.* § 1902.[9]

---

[4] *State v. Abel*, 2011 WL 5925284, *1 (Del. Super. Nov. 28, 2011) (internal quotation marks and citation omitted).

[5] *Dattanie v. State*, 2014 WL 595049, *1 (Del. Super. Jan. 14, 2014).

[6] *State v. Zachary*, 2013 WL 5783388 at *2.

[7] *See* Opinion Upon Def.'s Mot. to Suppress, 15 (July 17, 2014) (hereinafter "Opinion at _____").

[8] *Id.* at 16.

[9] *Id.* at 19.
        Title 11, § 1902 of the Delaware Code provides:

11. In addition, the Court found that there was no evidence in the record that the officer(s) who arrested Defendant did so based on a Title 21 violation that Defendant committed in their presence in accordance with 21 *Del. C.* § 701(a).[10]

12. Although the State urges the Court to adopt a "liberal view" of 21 *Del. C.* § 701(a) based on the 1967 decision in *State v. Coustenis*, the General Assembly amended the statute in 1968. The language at issue in the *Coustenis* decision (that authorized law enforcement officers to make an arrest for a Title 21 violation committed "upon view") was replaced with the current language (authorizing an arrest for a Title 21 violation committed "in their presence").[11] Furthermore, the General Assembly has specified only four circumstances under which an "arresting

---

(a) A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.

(b) Any person so questioned who fails to give identification or explain the person's actions to the satisfaction of the officer may be detained and further questioned and investigated.

(c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime.

The two cases cited by the State in support of its assertion that the Court has previously upheld traffic stops where an officer, conducting surveillance, radios his or her observation of a traffic violation to another officer who then conducts a traffic stop are distinguishable. *See State v. Brown*, 2010 WL 2872846 (Del. Super. July 22, 2010); *State v. Brohawn*, 2001 WL 1629086 (Del. Super. Mar. 6, 2001). The Court heard testimony from the officers who conducted the stops in those cases, there is no indication that the State contended that either defendant was arrested under 21 *Del. C.* § 701, and the record showed that facts were developed after the vehicles were stopped that supported the officers' reasonable, articulable suspicion of illegal activity and their ability to lawfully detain the defendant for further questioning and investigation in accordance with 11 *Del. C.* § 1902.

[10] *See* Opinion at 19.

[11] *See State v. Rizzo*, 634 A.2d 392, 399 (Del. Super. 1993) (noting that the Delaware Supreme Court "assert[ed] the necessity of a 'liberal and reasonable' interpretation of the phrase 'upon view'" in 21 *Del. C.* § 701(a) in *State v. Halko* [cited by the *Coustenis* decision], however § 701(a) was subsequently amended to replace the "upon view" language with "in their presence").

4

officer [may] work[] in conjunction with an observing officer" – speed violations, red traffic lights, electronic communication devices, and seat belts.[12] The State does not assert, and the record does not reflect, that there is any evidence of a speed, red traffic light, electronic communication device, or seat belt violation in this case.[13]

---

[12] *See* Opinion at n. 85.

The General Assembly amended 21 *Del. C.* § 701 on August 12, 2014 (after the Court issued the Opinion) to include § 701(a)(4) – (5). Section 701(a) now provides:

> (a) The Secretary of Public Safety, the Secretary of Safety and Homeland Security's deputies, Division of Motor Vehicles investigators, State Police, state detectives and other police officers authorized by the law to make arrests for violation of the motor vehicle and traffic laws of this State, provided such officers are in uniform or displaying a badge of office or official police identification folder, may arrest a person without a warrant:
>
> > (1) For violations of [Title 21] committed in their presence; or
> >
> > (2) For violations of § 4169 of [Title 21], relating to speed violations, when the speed is determined by radar, electronic devices, electromechanical devices, audio sensor devices, visual sensor devices or aerial spotting, even though the officer making the arrest did not actually observe the radar speed meter or observe the violation from the aircraft, provided such arresting officer is in a position to observe the vehicle being detected or provided that the officer is working in conjunction with the reading or observing officer and is immediately advised of the violation and that the vehicle being apprehended is the vehicle detected; or
> >
> > (3) For violations of § 4108(a)(3) of [Title 21] relating to red traffic lights, when the violation is determined by personal observation by another law-enforcement officer who communicates the information to the arresting officer by radio or other telecommunications device, provided that the arresting officer is working in conjunction with the observing officer, the arresting officer is immediately advised of the violation and the vehicle being apprehended is the vehicle detected; or
> >
> > (4) For violations of § 4176(C) of [Title 21] relating to electronic communication devices, when the violation is determined by personal observation by another law-enforcement officer who communicates the information to the arresting officer by radio or other telecommunications device, provided that the arresting officer is working in conjunction with the observing officer, the arresting officer is immediately advised of the violation and the vehicle being apprehended is the vehicle detected; or
> >
> > (5) For violations of § 4802(a)(1)(2) or § 4803 of [Title 21] relating to seat belts, when the violation is determined by personal observation by another law-enforcement officer who communicates the information to the arresting officer by radio or other telecommunications device, provided that the arresting officer is working in conjunction with the observing officer, the arresting officer is immediately advised of the violation and the vehicle being apprehended is the vehicle detected.

Section 701(a), as amended, does not change the outcome of the Court's decision.

[13] *See Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1259 (Del. 2011) ("It is beyond the province of courts to question the policy or wisdom of an otherwise valid law. Rather, we must take and apply the law as we find it, leaving any desirable changes to the General Assembly").

13. Finally, based on the totality of the circumstances, the Court found that the Confidential Informant's ("CI") tip did not provide reasonable, articulable suspicion to stop and seize Defendant (or probable cause for his warrantless arrest).[14] The Court acknowledged that the CI was past proven and reliable, however the CI's tip lacked detail as to the alleged illegal activity.[15]

14. Here, the State's asserted grounds for its Motion for Reargument merely rehash arguments that have already been decided by the Court. The State has not established that the Court overlooked a controlling legal precedent or misapprehended the law or facts such that would change the outcome of the decision. Therefore, the Court's decision granting Defendant's Motion to Suppress stands.

Accordingly, the State's Motion for Reargument is hereby DENIED.

**IT IS SO ORDERED.**

Judge Diane Clarke Streett

oc:    Prothonotary

cc:    Dep. Atty. Gen. Sarita R. Wright
       Patrick Collins, Esquire

---

[14] *See* Opinion at 21, 23.

[15] *Id.* at 22 – 23 ("The CI did not provide any detail regarding the buyers, the location(s) and time(s) of distribution, or supply Det. Pfaff with any prediction as to Defendant's future actions").

Contrary to the State's assertion that *Lewis v. State* is factually similar, the informant's tip in *Lewis* contained specific facts and conditions that existed at the time the tip was made, which were subsequently corroborated through independent police investigation. *Lewis v. State*, 2010 WL 4869110 (Del. Nov. 24, 2010).

6